UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


TED DURBIN (#132464)

VERSUS                                        CIVIL ACTION

BURL CAIN, ET AL                              NUMBER 12-496-SDD-SCR


### NOTICE

       Please take notice that the attached Magistrate Judge's Report
has been filed with the Clerk of the U. S. District Court.
       In accordance with 28 U.S.C. § 636(b)(1), you have 14 days
after being served with the attached report to file written
objections to the proposed findings of fact, conclusions of law,
and recommendations set forth therein.   Failure to file written
objections to the proposed findings, conclusions and
recommendations within 14 days after being served will bar you,
except upon grounds of plain error, from attacking on appeal the
unobjected-to proposed factual findings and legal conclusions
accepted by the District Court.

       ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE
WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, October 24, 2013.


                              STEPHEN C. RIEDLINGER
                              UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TED DURBIN (#132464)

VERSUS                                          CIVIL ACTION

BURL CAIN, ET AL                                NUMBER 12-496-SDD-SCR

**<u>MAGISTRATE JUDGE'S REPORT</u>**

Before the court is the Plaintiff's Motion for Summary Judgment. Record document numbers 25.[1] Also before the court is the Defendants' Motion for Partial Summary Judgment. Record document number 28. The motions are opposed.[2]

Pro se plaintiff, an inmate currently confined in David Wade Correctional Center ("DWCC"), Homer, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Louisiana State Penitentiary ("LSP") Warden Burl Cain and DWCC Warden Jerry Goodwin. Plaintiff alleged that Warden Cain ordered him transferred from LSP to DWCC in retaliation for refusing to dismiss a lawsuit the plaintiff filed against Warden Cain. Plaintiff further alleged that Warden Goodwin interfered with the exercise of his religion in violation

---

[1] Plaintiff also filed Plaintiff's Supplement for Summary Judgment, which amended his summary judgment motion. Record document number 35.

[2] Record document numbers 27, 24 and 31.

of his First Amendment rights.[3]

Plaintiff moved for summary judgment[4] relying on a statement of facts, his declaration, the results of Administrative Remedy Procedure ("ARP") LSP-2010-1219 and DWCC-12-335, a copy of a memorandum from Chaplain Supervisor Jim Rentz to security personnel dated September 15, 2008, a copy of Department Regulation No. B-08-010 and copies of pleadings filed in *Ted Durbin v. Burl Cain, et al*, CV 10-655-JJB-CN. Plaintiff supplemented his motion for summary judgment[5] relying on copies of Department Regulation No. B-02-001 dated December 30, 2010 and March 16, 2012, a copy of a memorandum dated January 19, 2012 from Warden Cain to Jeff Travis regarding a waiver request to effectuate the plaintiff's transfer to DWCC, a copy of Institution Transfers to DWCC dated January 30, 2012, and the affidavit of Louis M. Karno.

Defendants moved for partial summary judgment relying on a statement of undisputed facts, the affidavits of Warden Goodwin and

---

[3] Plaintiff also named as defendants LSP Asst. Warden Troy Poret, LSP Asst. Warden Joe Lamartiniere, LSP Chaplain Gary Sumrall, DWCC Deputy Warden Angie Huff and DWCC Chaplain M. Ray Anderson. All of the plaintiff's claims against these defendants as well as his deliberate indifference, conspiracy and retaliation claims against Warden Goodwin were previously dismissed. Record document number 39.

[4] Plaintiff addressed claims in his motions for summary judgment which were not raised in the complaint. Plaintiff's motions for summary judgment shall not be treated as an amendment to the complaint.

[5] Record document number 35.

2

Chaplain M. Ray Anderson, documents related to the plaintiff's transfer to DWCC, a copy of DWCC Inmate Posted Policy #59, a copy of Employee Policy Memorandum #01-05-00, a copy of Department Regulation No. B-08-005, copies of e-mail correspondence between LSP and DWCC chaplains, copies of documents regarding DWCC North Compound religious services, copies of Department Regulation B-02-001 and B-02-019 and a copy of the complaint filed in *Ted Durbin v. Burl Cain, et al*, CV 10-655-JJB-RLB.

## I. Factual Allegations

Plaintiff alleged that in October 2011[6] Asst. Warden Poret conveyed a message from Warden Cain that if the plaintiff did not dismiss a lawsuit he filed against Warden Cain, he would be transferred to another prison facility. Plaintiff alleged that on November 16, 2011, he told Chaplain Sumrall that Warden Cain was threatening to have him transferred to another facility because of his pending litigation but Chaplain Sumrall did not respond.

Plaintiff alleged that he did not dismiss his lawsuit against Warden Cain and on January 30, 2012, he was transferred to DWCC.

Plaintiff alleged that on February 2, 2012, he met with Warden Goodwin who informed him that there were no other inmates at the

---

[6] Plaintiff alleged that his conversation with Asst. Warden Poret took place in October 2012. However, the plaintiff filed his complaint on August 15, 2012. Obviously, the plaintiff could not have complained about an event which had not yet occurred. The court will assume that the alleged incident took place in 2011 rather than 2012.

prison facility who practice Judaism.  Plaintiff alleged that Warden Goodwin informed him that he would be provided an area to practice his faith but it would not be in the Hope Chapel. Plaintiff alleged that Chaplain Anderson told him the area he was permitted to practice his faith in was inappropriate but they were at the mercy of the prison security officers.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule 56, Fed.R.Civ.P.  Supporting affidavits must set forth facts which would be admissible in evidence.  Opposing responses must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(c).  The court need only consider cited materials, but it may consider other materials in the record.  Rule 56(c)(1)(3).

### B. Malicious Complaint

Defendants argued that the plaintiff's complaint should be dismissed as malicious insofar as it "serves as a 'continuation' of a pending lawsuit that the plaintiff has previously filed in federal court."[7]  Specifically, the defendants argued that the

---

[7] Record document number 28-1, pp. 4-6.

4

plaintiff previously filed *Ted Durbin v. Burl Cain, et al*, CV 10-655-JJB-RLB (M.D. La.), against many of the same defendants and in which he alleged that he was transferred to a prison out camp in retaliation for exercising his religious beliefs between April 2010 and September 2010.  Defendants noted that the plaintiff referenced CV 10-655-JJB-RLB in this litigation and they argued that insofar as the plaintiff is attempting to re-litigate claims raised in CV 10-655-JJB-RLB, the claims should be dismissed as malicious.

Federal courts are statutorily mandated to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  Federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed in forma pauperis, such as this matter, federal law provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal-

5

(i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A district court may dismiss an in forma pauperis proceeding for frivolousness or maliciousness at any time, before or after service of process, and a district court is vested with especially broad discretion in determining whether such a dismissal is warranted. *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988). A complaint is malicious if the plaintiff asserts against the same or different defendants virtually identical causes of action "arising from the same series of events and alleging many of the same facts as an earlier suit." *Id*. When declaring that a successive in forma pauperis suit is malicious, the court should insure that the plaintiff obtains one bite at the litigation apple - but not more. *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993).

In this action, the plaintiff asserted a claim that is substantially different to the claims raised in CV 10-655-JJB-RLB. The date of the alleged incident is different and the causes of action arise from a different series of events. Therefore, the instant complaint is not subject to dismissal as malicious.

6

**C. 42 U.S.C. § 1997e(e)**

Defendants argued that the plaintiff's claims for compensatory damages are subject to dismissal because the plaintiff failed to allege that he suffered a physical injury.

Subsection (e) of 42 U.S.C. § 1997e provides:

(e) Limitation on recovery.  No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

A review of the allegations in the complaint showed that the plaintiff failed to allege that he sustained any physical injury as a result of the defendants' alleged actions.  The failure to allege physical injury precludes recovery of compensatory damages for mental or emotional injuries.  Although § 1997e(e) prohibits the plaintiff from recovering compensatory damages, it does not bar recovery of punitive damages for constitutional violations despite the lack of any physical injury.  *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007).  Of course, the plaintiff must prove a deprivation of a  constitutional right to obtain relief in any form of damages.

**E. Retaliation**

Plaintiff alleged that Warden Cain had him transferred to DWCC in retaliation for refusing to dismiss CV 10-655-JJB-RLB. Plaintiff alleged that as a result of the transfer he lost hobby craft privileges which was his only source of income.  In addition, the plaintiff alleged that his family is no longer able to visit

7

him because of the added distance they must travel to DWCC.

Inmates have no justifiable expectation that they will be incarcerated in any particular prison within a state. *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741 (1983). Administrative transfers of prisoners to another prison, the conditions of which may be substantially less favorable, do not constitute deprivations of Fourteenth Amendment liberty requiring a due process hearing. *Meachum v. Fano*, 427 U.S. 270, 96 S.Ct. 2532 (1976).

Nonetheless, prison officials may not retaliate against a prisoner for exercising his First Amendment right of access to the courts or for complaining through proper channels about a guard's misconduct. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). However, claims of retaliation from prison inmates are regarded with skepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions. *Woods*, 60 F.3d at 1166.

To prevail on a claim of retaliation, a prisoner must establish four elements: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Morris*, 449 F.3d at 684; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).

If an inmate is unable to point to a specific constitutional right that has been violated, then the claim will fail as a matter of law. *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the violation of a constitutional right); *Woods*, 60 F.3d at 1166 (observing that, "[t]o state a claim, the inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than his personal belief that he is the victim of retaliation. *Jones*, 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299,310 (5th Cir. 1997). To demonstrate the requisite retaliatory intent on the defendants' part, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166. Regarding the element of causation, a successful claim of retaliation requires a showing that "but for" some retaliatory motive, the complained-of adverse action would not have occurred. *Johnson*, 110 F.3d at 310; *Woods*, 60 F.3d at 1166. In addition, the complained-of adverse action must be more than *de minimis* to support a claim of retaliation in the prison context. *Morris*, 449 F.3d at 684-85; *Hart*, 343 F.3d at 764. The entirety of the adverse act should be considered to determine whether the plaintiff's injury was more than merely *de minimis*. *Lee v. Louisiana Department of Corrections*, ____ Fed. Appx. ____, 2013 WL 4615180 (5th Cir. August 30, 2013); *Hanna v. Maxwell*, 415 Fed. Appx. 533, 536 (5th Cir.

9

2011); *Richard v. Martin*, 390 Fed. Appx. 323, 325-26 (5th Cir. 2010).

The purpose of allowing inmates to bring retaliation claims under 42 U.S.C. § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris*, 449 F.3d at 686 (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 n. 10, 118 S.Ct. 1584 (1998)). Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *Morris*, 449 F.3d at 686. *De minimis acts* that would not deter an ordinary person from further exercise of his rights do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id*. Thus, an inmate's job transfer from the commissary to the kitchen was *de minimis*, while his transfer to a more dangerous prison was not. *Id*. at 687; *see also Bibbs v. Early*, 541 F.3d 267, 271-72 (5th Cir. 2008) (subjecting inmate to below-freezing temperatures for more than four hours during each of four consecutive nights was more than *de minimis*). Adverse acts that cause an inmate only a "few days of discomfort," impose "a [single] minor sanction," or impose an otherwise constitutional restriction on the inmate would be *de minimis* acts. *Id*. at 685-86. Filing a disciplinary charge that is dismissed constitutes an adverse act that is "less substantial than the least substantial *de minimis* act identified by the *Morris* court. *Starr v. Dube*, 334

Fed. Appx. 341 (1st Cir. 2009); *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009)(a "single [allegedly unjustified] retaliatory charge that is later dismissed is insufficient to serve as the basis of a § 1983 action").

The summary judgment evidence showed that the plaintiff filed CV 10-655-JJB-RLB on October 1, 2010, and it remained pending before this court on January 30, 2012, when the plaintiff was transferred to DWCC.[8]  In his affidavit sworn under penalty of perjury, the plaintiff stated that Asst. Warden Poret told him that Warden Cain instructed him to convey to the plaintiff that he would be transferred if he did not dismiss the civil action pending against Warden Cain.[9]  Plaintiff asserted that when he did not dismiss the civil action, he was transferred to DWCC.

Warden Cain offered a different version of the alleged incident.  According to him, the plaintiff was transferred to create available bed space for new offenders arriving at the state penitentiary.[10]

The court cannot resolve genuine disputes of material facts when ruling on a motion for summary judgment. The reason for the

---

[8] A court may take judicial notice of the record in prior related proceedings. *Missionary Baptist Foundation of America, Inc. v. Wilson*, 712 F.2d 206 (5th Cir. 1983).  The court hereby takes judicial notice of the proceedings in CV 10-655-JJB-RLB.

[9] Record document number 25, p. 22.

[10] Record document number 28-4.

11

plaintiff's transfer is a genuinely disputed material fact, which makes summary judgment on the plaintiff's retaliation claim inappropriate.

**F. Exercise of Religion**

Plaintiff alleged that Warden Goodwin violated his First Amendment right to free exercise of religion. Specifically, the plaintiff alleged that Warden Goodwin informed him that there were no other inmates who practiced Judaism at DWCC. Plaintiff alleged that Warden Goodwin told him that he would not be given access to the Hope Chapel but would be provided space in the security office to conduct religious services. Plaintiff alleged that the space provided to conduct religious services is inappropriate.

"[I]nmates retain their First Amendment right to exercise religion; however, this right is subject reasonable restrictions and limitations necessitated by penological goals." *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995)(footnotes omitted). Some restrictions on religious meetings in prison - even restrictions that are indefinite and imposed on inmates who have not abused religious meeting times - do not offend the First Amendment. *Copeland v. Livingston*, 464 Fed.Appx. 326, 330 (5th Cir. 2012).

A restriction "impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" *Florence v. Bd. of Chosen Freeholders of the Cnty. Of Burlington*, _____ U.S. _____, 132 S.Ct. 1510, 1515

12

(2012)(quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254(1987)).   To evaluate the reasonableness of a prison restriction, the court considers (1) whether the regulation or action has a logical connection to the legitimate governmental interests invoked to justify it; (2) whether the inmate has an available alternative means of exercising the rights; (3) the impact of accommodation on other inmates, guards, and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's "rights at *de minimis* cost to valid penological interests." *Safley*, 482 U.S. at 89-91, 107 S.Ct. 2254; *Baranowski v. Hart*, 486 F.3d 112, 120-22 (5th Cir. 2007).  "A court must determine whether the government objective underlying the regulation at issue is legitimate and neutral, and that the regulations are rationally related to that objective." *Freeman v. TDCJ*, 369 F.3d 854, 860 (5th Cir. 2004)(internal quotation marks and citation omitted).   Due regard also must be given to the decisions of prison officials, because "'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.'" *Safley*, 482 U.S. at 89, 107 S.Ct. 2254 (omission and alteration in original)(citing *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 128, 97 S.Ct. 2532 (1977)).

The summary judgment evidence supports a finding that the restrictions on the plaintiff's religious prayer services did not

violate his First Amendment rights under *Turner.* The summary
judgment evidence showed that upon arrival at DWCC, the plaintiff
asked Warden Goodwin to allow him to conduct prayer services on
Friday evenings in the prison chapel.[11] The summary judgment
evidence showed that due to current security staffing and budgetary
concerns, the prison chapel is open Saturday through Wednesday.[12]
The summary judgment evidence showed that the warden, with the
assistance of the Chaplain's office, designated a room in the North
Security Office where the plaintiff would be allowed to conduct the
prayer service.[13] The summary judgment evidence showed that the
room was selected because it provides the plaintiff some privacy to
conduct his prayer activities while still allowing security
officers to monitor the plaintiff with minimal disturbance.[14] The
summary judgment evidence showed that the plaintiff, like other
inmates, has access to the prison chapel between Saturday and
Wednesday.[15]

Applying the *Turner* factors, the refusal to allow the
plaintiff to conduct prayer services on Friday evenings in the
prison chapel passes constitutional muster. First, there is a

---

[11] Record document number 28-5, p. 2.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

logical connection between the prison policy and the legitimate governmental interest that justifies it. Prison officials maintain that there are insufficient resources and security personnel to open the prison chapel seven days per week.

Second, there are alternative means available to the plaintiff to exercise his constitutional right. Plaintiff was provided an alternate and relatively private location where he can conduct prayer services on Fridays while being monitored by security officers. In addition, the plaintiff is given access to the prison chapel on the days of the week that it is open to prisoners.

Third, accommodating the plaintiff's request to have the prison chapel made available to him on Friday evenings would require additional personnel staff hours and impose additional costs. Any favoritism perceived by other inmates reasonably could lead to prison unrest. It would also likely open the way for other religious groups to justifiably make similar claims. Prisoners with different religions or belief systems could legitimately demand to congregate in the prison chapel on days the chapel would otherwise be closed, thereby significantly increasing the cost to the prison as well as causing additional confusion and disruption in prison administration and scheduling.

Finally, the court must consider the presence of alternatives. The Supreme Court has noted that "prison officials do not have to set up and then shoot down every conceivable alternative method of

accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 90, 107 S.Ct. at 2262.  Instead, "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id*.  Plaintiff has presented no alternatives which meet the *Turner* requirements.

Plaintiff's claim that Warden Goodwin violated his First Amendment right to freely exercise his religion can not withstand summary judgment.

<u>**RECOMMENDATION**</u>

It is the recommendation of the magistrate judge that the plaintiff's Motion for Summary Judgment, as supplemented, be denied.  It is further recommended that the defendants' Motion for Partial Summary Judgment be granted in part, dismissing the plaintiff's claims against Warden Jerry Goodwin.  In all other respects the defendants' Motion for Partial Summary Judgment should be denied and this matter referred back to the magistrate judge for further proceedings on the plaintiff's retaliation claim against Warden Burl Cain.

Baton Rouge, Louisiana, October 24, 2013.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

16